Mr. Justice DANIEL.
In the decision just pronounced, so far as it affirms the judgment of the. Circuit Court, I readily concur. I concur, too, in the opinion of the majority of the court, so far as it maintains the position, that the contracts sued upon in this case, being-essentially New- York contracts, could not be discharged by the insolvent laws of Maryland. But to any and every, extent to which it may have been intended to assume that these contractsj if properly Maryland contracts, — that is, if they had been made in Maryland, and designed to have been there performed, —• should not have been ' discharged by the insolvent laws of that State, enacted and in force prior to the contracts themselves, I am constrained to express my entire dissent. I hold it to be invariably just, that-the law of the place where a contract is made, or at which it is to be performed, enters-essentially into and becomes a part of such contract; and should govern its construction, whenever a departure from that law is not so stipulated as fo establish a different rule by the contract itself. This princi-pie of interpretation I deem to be in accordance with the doctrine of the writers upon the comity of nations, as we find it extensively collated by the late Justice Story in his learned researches upon the conflict of laws. This rule, moreover, I hold to be in no wise in conflict with, the eighth section of the first article of the constitution of the United States, conferring upon .Congress the power to establish uniform laws on the subject of bankruptcy ; nor with the tenth section of the same article, which prohibits to the States' the power of enacting laws.impairing the obligation of contracts.. On the contrary, it recognizes in'the federal government, and in the governments of the States, the correct and complete distribution of powers assigned to them respectively by the constitution.-
By a reasonablé rule of interpretation, and by repeated adjudications of this court, it is held, that'the mere investiture of Congress with the power to pass laws on the subject of bankruptcy would not, ipso facto, divest such a power out of the States. The withdrawing of the power from the States would-be dependent upon *313 an actual exercise by Congress of the power .conferred by'the con-. s'titution, .and upon the incompatibility between the modes and extent of its exercise with an exertion of. authority on the same subject by the States. The mere grant of power to Congress, whilst that power remained dormant, would leave the States in possession of whatever authority appertained to them at the period of the adoption of the constitution. These conclusions are in entire harmony with the decisions of this court in the case of Sturges v. Crowninshield; in that of Ogden v. Saunders, so far as the latter has been comprehended ; for whilst it would be presumptuous not to ascribe any perplexity in this respect rather to my own infirmity than to a defect in the work of much wiser men, I must be permitted to say,- that I have great difficulty in reconciling the case of Ogden v. Saunders with other decisions of this court, or in reconciling it even with itself. These conclusions, too, are in accordance with the very perspicuous opinions of Justices Washington- and Thompson in the case-last mentioned, and with the opinion of Justice Story in.that- of Houston v. Moore. Yet, if it be asked whether the States can now enact bankrupt laws within the sense and meaning of the power granted to Congress, I answer that they cannot. This reply, however, is by no means :a deduction from the terms of the grant to Congress, as expressed in the eighth section of the first article of the constitution. . That provision, I maintain, for aught that its language imports, leaves the States precisely where it. found them, except so far as they might be affected by an actual exercise of authority by Congress. The States were found in the habitual practice- of bankrupt systems; and as long as they should not be controlled in'that practice by the action of Congress, they would have - remained in possession Of the right to continue their familiar practice, so far as the mere language of the eighth section of the first article of the constitution would affect them. But the constitution has proceeded beyond the .potential restriction of the. section just mentioned, and in so doing has abridged the power it found in practice in the States. -It has, in section tenth of the same article, declared that no State shall have power to pass, any u law impairing the obligation of contracts ” ; and in this inhibition, as. I hold-, is to be found the true limit upon the power of passing- bankrupt laws, previously exercised by the States. Bankrupt laws, as understood at the time of adopting the constitution, and at all other periods of time, have been interpreted to mean laws which discharge -or annihilate the contract itself, with all its obligations ; and if the constitution had stopped short at providing for a discretionary power in'Congress to .enact such laws, and should have omitted any restraint upon' the States, having found the latter exerting the power of passing bankrupt laws, it would have left them, by the mere fact of this omission, still with the power, by retroactive legislation, of dissolving and abroga'tifig contracts. By connecting .the *314 power given to Congress to pass bankrupt laws with the inhibition upon the States contained in the tenth section of the first article, all power in the latter to enact bankrupt laws as laws operating upon contracts previously existing has been taken away. But a power to discharge a contract made under a system of laws established and known to all, as public laws are inferred and indeed are necessarily admitted to be, — laws which may permit, nay, which under certain circumstances may command, such discharge, —. presents a wholly different aspect of things, — one implying no bankrupt power, no pow'er that is retroactive, and incompatible with either the legal or moral obligations involved in the contract; an aspectvof "things which, so far from authorizing an infringement, insists upon a fulfilment,. of the contract, an exact compliance with its true obligations. To prevent this, then, would be to impair the obligations of the contract, tó set up some new and retroactive rule for its interpretation, and thereby to inflict a wrong on a portion, if not on all, of the contracting parties.
„To carry into effect the obligations of parties is the perfect right of communities of which those parties are members, and within which their obligations are made, and within which it may have been stipulated that they should be fulfilled ■; the enforcement of obligations, when intended to be performed according to the laws of other communities, constitutes a right and a duty recognized by the-comity existing amongst all civilized governments. The. ^ase under, consideratipn being one of a contract, which, though made in Maryland, was to.be performed ih the State of New York, the Circuit Court decided very properly that it could not be discharged by the insolvent laws of Maryland. But to prevent a misapprehension of the grounds on which this decision of the Circuit Court is approved, by myself, at least,.and that, by assenting to that judgment, I may not hereafter' be. considered as concluded from an applicaíü .1 of what is deemed the correct principle, when a case proper for its application may arise, the aforegoing explanation has been deemed proper.